SANDERS ET AL. *v.* HULMAN STREET COAL COMPANY.

[No. 15,763. Filed January 19, 1937.]

*Stanley E. Stohr* and *George E. Wells,* for appellants.

*Hays & Hays, John S. Taylor, Alonzo C. Owens* and *J. Olias Vanier,* for appellee.

KIME, J.—It appears from the evidence that Marion Sanders was working as a check-weighman at the coal mine owned and operated by the appellee. Sanders was selected by the members, employed at said mine, of a miners' union to check the weights of the coal loaded by these miners as it passed the scales on the tipple at the mine. The appellee employed a boss weighman, whose duty it was to weigh the coal as it reached the tipple and keep records thereof for the coal company. Sanders' duty to the miners who employed him required him to be at the side of the boss weighman to ascertain the weight of the coal from the scales and to see that the boss weighman recorded the correct coal weight upon the records the appellee required him to keep. The secretary of the local of the miners' union informed the appellee that Sanders was to act as check weighman and that 25¢ per miner per day was to be deducted from their wages and paid to Sanders. This instruction was complied with.

The evidence shows, without contradiction, that Sanders was placed in the check weighman position by the said miners; that the appellee had no control whatsoever over him; that the miners could remove him at their pleasure and designated his duty and that Sanders did no work of any kind for the appellee.

Sanders died January 4, 1936, and his dependents, the appellants here, filed an application for compensation with the Industrial Board alleging that he was an employee of the appellee and that he received an injury

arising out of and in the course of that employment which resulted in his death. A single member after a hearing ordered that appellants take nothing by their application and a like result was reached after a review by the full board. It is from that award that appellants appeal, assigning as error the statutory assignment which is sufficient to present the questions here sought to be presented.

The full board in its award found that the death of "the said Marion Sanders was not due directly or indirectly to any accidental injury arising out of and in the course of his employment with the defendant.

"It is further found that the said Marion Sanders was employed as a check weighman; that as such check weighman he was not in the employ of the defendant, but was employed by the coal diggers, who paid the said Sanders for the work performed for them."

The appellants contend that Sanders was (1) in the employ of the appellee and (2) that he died as the result of an accidental injury arising out of and in the course of his employment. The evidence relative to the injury alleged to have been sustained by Sanders is conflicting. There is evidence to the effect that Sanders did not, upon the day it is alleged he sustained the injury, lift any coal car onto the track, as is alleged, and thus sustain the hernia which the appellants allege he did sustain. Of course there is evidence from which the board could have found that he did sustain this injury but we are bound by the finding of the board made from conflicting evidence.

The appellants say that Sanders was in the employ of the appellee and that since his duties are prescribed by statute that he was an employee of the Coal Company and contend that the situation here is similar to that of the shot firer in the case of *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289.

Here Sanders was in no sense of the word an employee of the appellee. The coal miners, because they would not be satisfied with the weights determined by the boss weighman, decided to put a check weighman at the side of the boss weighman for their own satisfaction, theoretically to guarantee to them the accuracy of weights of coal loaded by them. In the Duncan case, *supra,* the coal mining company had delegated to the union the selection of the shot firer. But here the mining company had not delegated to the miners' union any such right. The appellee here could not hire, discharge, prescribe the working conditions, nor control the actions of Sanders in any way.

The appellants further contend that since Sanders received his money from the appellee that this fact is of some importance in determining whether he was in the employ of the mining company but here as in the Duncan case, *supra,* the method of payment amounted to nothing more than a matter of bookkeeping and is not determinative of whether or not the relationship of master and servant existed. The Duncan case was decided primarily upon the idea that a shot firer was necessary to the mining of the coal under the liberal construction that should be given the workmen's compensation act and on that basis it was decided that he was an employee of the mining company, but here the work done by Sanders was only for the personal satisfaction of his employers—the coal miners themselves.

In the Duncan case, *supra,* there was a specific agreement between the mining company and the union whereby the company agreed that the union could select, control and discharge the shot firer. Here there was no such agreement between the union and the appellee. In the shot firer case it was necessary for the shots, which the miners had placed, to be fired by themselves or someone else and before coal could be mined it was necessary

that it be shot. Thus there is left in that case some duty owing to the employer that the shot firer was discharging. In the instant case Sanders performed no duty that the miners owed to the appellee. Conceding that the act should receive a liberal construction, the evidence is not such that the board could possibly find that Sanders was an employee of the appellee.

The award of the board is correct and its action is affirmed.